TOLEDO BAR ASSOCIATION *v.* VILD.

[Cite as *Toledo Bar Assn. v. Vild,*
106 Ohio St.3d 471, 2005-Ohio-5518.]

(No. 2005–0763—Submitted June 28, 2005—Decided November 2, 2005.)

**Per Curiam.**

{¶ 1} Respondent, Jeffrey Thomas Vild, of Oregon, Ohio, Attorney Registration No. 0029535, was admitted to the Ohio bar in 1985. In 1998, we publicly reprimanded respondent for violating DR 6–101(A)(1) (prohibiting a lawyer from accepting a case that the lawyer is not competent to handle) and 6–101(A)(3) (barring a lawyer from neglecting an entrusted legal matter). *Toledo Bar Assn. v. Vild* (1998), 84 Ohio St.3d 179, 702 N.E.2d 865.

{¶ 2} On May 27, 2004, relator, Toledo Bar Association, filed an amended complaint charging respondent with 12 counts of professional misconduct. Respondent was served with a copy of the complaint but did not answer, and relator moved for default under Gov.Bar R. V(6)(F). A master commissioner appointed by the Board of Commissioners on Grievances and Discipline granted the motion, making findings of misconduct and a recommendation, all of which the board adopted.

{¶ 3} Relator failed to offer any evidence to support counts one, two, three, four, eight, and ten of the amended complaint. We therefore dismiss the allegations in those counts under Gov.Bar R. V(6)(F)(1)(b), which requires "[s]worn or certified documentary prima facie evidence" in support of a motion for default.

{¶ 4} The allegations in the remaining counts are discussed below.

## Count Five

{¶ 5} Bruce Smith hired respondent to represent him in a driving-under-the-influence ("DUI") case and paid respondent $400. When Smith was sentenced, he gave respondent his wallet for safekeeping. After his release from custody, Smith tried to contact respondent to recover the wallet and his case file but was unable to do so. After the Oregon Police Department told respondent that Smith would file a theft report if the wallet was not returned, respondent taped the wallet to his office door so that Smith could pick it up. Respondent never turned over the case file.

{¶ 6} The board found that respondent had violated DR 1–102(A)(6) (barring conduct that adversely reflects on an attorney's fitness to practice law) and 9–102(B)(4) (requiring prompt payment of the client's funds or the return of the client's property in the lawyer's possession). (The board's report mistakenly cited DR 1–102(A)(5) for count five, but the context clearly indicates that the board meant DR 1–102(A)(6)).

## Count Six

{¶ 7} Tammy Chandler hired respondent in December 2000 to file a bankruptcy petition on her behalf. Respondent did not file the petition for her until January 2003. In the meantime, Chandler received many calls from creditors.

{¶ 8} In addition, Chandler hired respondent in March 2002 to file a divorce complaint on her behalf. Respondent never did so. Chandler was unable to contact respondent despite trying over 100 times.

{¶ 9} Relator asked respondent in December 2002 to reply to Chandler's grievance against him. Despite a second request, respondent did not reply in writing until July 2003 and did not address the divorce issue in his response. He did not respond to relator's additional inquiries about the matter.

{¶ 10} The board found that respondent had violated DR 6–101(A)(3) and Gov.Bar R. V(4)(G) (requiring attorneys to cooperate with and assist in any disciplinary investigation).

## Count Seven

{¶ 11} Relator asked respondent in December 2002 to reply to a grievance filed by Judith Show. Despite a second request, respondent did not reply in writing until July 2003.

{¶ 12} The board found that respondent had thereby violated Gov.Bar R. V(4)(G).

## Count Nine

{¶ 13} After her husband's death in November 1997, Joanne Garcia hired respondent to administer the estate. Respondent failed to transfer certain real estate to her as she had requested, and the probate court in Lucas County scheduled a hearing on the matter. Respondent did not attend the hearing, and Garcia hired another attorney to complete the work that she had already paid respondent to perform.

{¶ 14} The board found that respondent had violated DR 6–101(A)(3), 7–101(A)(1) (barring an attorney from intentionally failing to seek the lawful objectives of a client), and 7–101(A)(2) (barring a lawyer from intentionally failing to carry out a contract of employment). The board also found that respondent had violated Gov.Bar R. V(4)(G) concerning Count Nine, but there is no support in the record for that finding.

## Count Eleven

{¶ 15} Casey Antles hired respondent in July 2002 to represent her in a domestic-relations matter. Respondent failed to file a shared-parenting agreement or child-support documents as Antles requested. Respondent did not answer Antles's telephone calls inquiring about the documents, and she eventually retained another lawyer to complete the work that respondent had been hired to perform.

{¶ 16} Relator asked respondent in January 2004 to reply to Antles's grievance against him. Respondent did not reply or cooperate with the relator's investigation.

{¶ 17} The board found that respondent had violated DR 6–101(A)(3), 7–101(A)(1), 7–101(A)(2), and Gov.Bar R. V(4)(G).

## Count Twelve

{¶ 18} Daniel Lindesmith hired respondent to file a bankruptcy petition on his behalf, and he paid respondent a $620 retainer fee. Respondent performed no services for Lindesmith, prompting Lindesmith to request a refund and the

return of his case file. Respondent never returned the money or the case file and did not respond when Lindesmith tried repeatedly to contact him.

{¶ 19} Relator asked respondent in January 2004 to reply to Lindesmith's grievance against him. Respondent did not reply or cooperate with the relator's investigation.

{¶ 20} The board found that respondent had violated DR 1–102(A)(4) (barring an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 6–101(A)(3), 7–101(A)(1), 7–101(A)(2), and Gov.Bar R. V(4)(G).

### Sanction

{¶ 21} In recommending a sanction for this misconduct, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). As aggravating factors, the board found that respondent had committed a previous disciplinary violation, had engaged in a pattern of misconduct, committed multiple offenses, failed to cooperate in the disciplinary process, refused to acknowledge the wrongfulness of his actions, caused harm to vulnerable clients, and failed to make restitution. BCGD Proc.Reg. 10(B)(1)(a), (c), (d), (e), (g), (h), and (i). The board cited no mitigating factors.

{¶ 22} Relator recommended that respondent's license to practice law be indefinitely suspended for his misconduct. The master commissioner and the board accepted this recommendation.

{¶ 23} We agree that respondent violated all of the provisions explained above, and we also agree that an indefinite suspension is appropriate. As we have consistently held, neglect of legal matters and the failure to cooperate in the ensuing disciplinary investigation warrant an indefinite suspension from the practice of law. *Disciplinary Counsel v. Treneff*, 104 Ohio St.3d 336, 2004-Ohio-6562, 819 N.E.2d 695, ¶ 16. And the act of accepting retainers or legal fees and failing to carry out contracts of employment is tantamount to theft of the fee from the client. *Columbus Bar Assn. v. Moushey*, 104 Ohio St.3d 427, 2004-Ohio-6897, 819 N.E.2d 1112, ¶ 16. Respondent's misconduct reflects poorly on the legal profession and caused harm to the clients whose legal matters he neglected.

{¶ 24} Accordingly, respondent is hereby indefinitely suspended from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR and LANZINGER, JJ., concur.

O'DONNELL, J., dissents.

O'DONNELL, J., dissenting.

{¶ 25} Respondent has been previously disciplined for neglecting a legal matter entrusted to him. Given his history, the absence of mitigation, his lack of cooperation, the refusal to acknowledge his wrongdoing, and his pattern of misconduct and failure to make restitution, I cannot understand how we can uphold the public's confidence in our profession unless we disbar respondent. Our profession expects no less. Accordingly, I would vote to disbar respondent.

---

Matthew J. Rohrbacher and Craig F. Frederickson, for relator.